**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**THERESA M. DAWSON,**

      **Plaintiff,**

**-vs-**                                        **Case No. 6:11-cv-1128-Orl-31KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Theresa M. Dawson, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 11, 12. This matter has been referred to me for issuance of a Report and Recommendation.

**I.    PROCEDURAL HISTORY.**

In August 2007, Dawson applied for disability benefits under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq*. (sometimes referred to herein as the Act), following a denial of a previous SSI application. R. 13, 114-20. She alleged that her disability began on May 15, 2007. R. 13, 35, 114.

Dawson's application was denied initially and on reconsideration. Dawson requested a hearing before an administrative law judge (ALJ). R. 72. The ALJ held a hearing on April 22, 2010, at which Dawson, represented by an attorney, Jane Schur, Dawson's sister, and Paul Dolan, a vocational expert (VE), testified. R. 27-58.

After considering the testimony and the medical evidence presented, the ALJ concluded that even though Dawson had worked occasionally after the alleged disability onset date, she had not engaged in substantial gainful activity since the date she filed the present SSI application. R. 15.

The ALJ found that the medical evidence showed that Dawson had anxiety, which was a severe impairment that did not meet or equal any of the impairments listed in the applicable social security regulations. R. 15. The ALJ concluded that Dawson would have no limitations in activities of daily living, moderate limitations in social functioning and concentration, persistence or pace, and no episodes of decompensation. R. 15-16. The ALJ found that Dawson did not have any severe physical impairment, relying on the opinion of an examining physician. R. 20.

The ALJ found that Dawson had the residual functional capacity (RFC) to perform work at all levels of exertion but was limited to jobs involving simple, routine, repetitive tasks involving up to three-step commands and that she could have only occasional interaction with the general public and co-workers. R. 17. In reaching this conclusion, the ALJ found that Dawson's testimony was not entirely credible. R. 17.

Dawson had no past relevant work. R. 20. Based on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt P, App. 2, and the testimony of the VE, the ALJ concluded that Dawson could perform work available in the national economy, such as maid, mail clerk and office helper. R. 21. Accordingly, the ALJ determined that Dawson was not disabled. R. 21.

Dawson asked the Appeals Council to review the ALJ's decision. R. 7. On May 16, 2011, the Appeals Council found no reason to review the ALJ's decision. R. 1-3. Thereafter, Dawson sought review of the Commissioner's final decision in this Court.

## II. JURISDICTION.

Plaintiff having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III. STANDARD OF REVIEW.

To be entitled to disability benefits under SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails

to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**IV. STATEMENT OF FACTS**.

After a thorough review of the record, I find that the facts are adequately set forth in the parties' memoranda and the ALJ's decision. Accordingly, I will only summarize pertinent portions of the record to protect Dawson's privacy to the extent possible.

 *A.*   *Personal Information and Work History.*

Dawson was born in 1955. She completed two years of college. R. 33. She lived with her boyfriend and her children. R. 44.

Dawson had worked in telemarketing, at a fast food counter and selling computer software. She did not work very long at any job, which she attributed to anxiety and panic attacks, and she had not earned much money in her previous work. R. 34-35. After she filed her SSI application, she worked at a job that tried to recruit people to join a travel club, and she applied for other work. R. 36.

 *B.*   *Medical Records.*

Dawson was treated at a Health Department clinic beginning in September 2003. She initially complained of anxiety "from time to time" and problems with a herniated disk due to a back injury twenty years earlier. R. 212. The assessment was depression, anxiety and chronic back pain. She was treated with Paxil, Naprosyn, and Vistaril. R. 209-11.

In 2005, Dawson had psychological screening by the Department of Corrections (DOC). R. 264. She reported that he had recently been using crack cocaine and alcohol (ETOH). R. 263. She indicated that she had some mild anxiety and difficulty sleeping. R. 262. She reported that Paxil worked well. R. 261. She also had back problems with pain in her buttocks radiating down her left leg. R. 262. Her global assessment of functioning (GAF) score was 63. R. 264.[1] Upon examination, she was found to be coherent and euthymic. R. 258. The assessment was polysubstance dependence and a panic disorder with agoraphobia in remission. The physician wrote as follows: "Inmate feels no need for psychiatric meds or psych follow up nor does she want any counseling." R. 259.

An x-ray of Dawson's cervical spine taken in February 2006, revealed mild scoliosis and reduced lordosis. Degenerative disc disease was not apparent. R. 244. It does not appear that Dawson sought pain management treatment while incarcerated.

---

[1] The Global Assessment of Functioning (GAF) scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). *Harold I. Kaplan, M.D. & Benjamin J. Sadock, M.D., Synopsis of Psychiatry* 299 (8th Ed. 1998). A GAF score of 61-70 reflects some mild symptoms (*e.g.* depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (*e.g.* occasional truancy, or theft within the household), but generally functioning well, with some meaningful interpersonal relationships. *Id.*

J. Jeff Oatley, Ph.D., examined Dawson on January 7, 2008 at the request of the SSA. Dawson reported chronic back pain and periodic anxiety attacks. R. 269. Pain caused sleep disturbance. Anxiety episodes had begun to occur in supermarkets or when Dawson was forced to go to a doctor's office. However, Dawson denied having unexpected anxiety attacks. Dr. Oatley observed that Dawson's mood was nervous and mildly tearful. She performed well on psychological testing. No concentration or memory deficits or orientation problems were noted. R. 270-71. His assessment was polysubstance dependence reported to be in full remission and social phobia indicated by anxiety when forced to interact in public. R. 271.

David W. Carpenter, M.D., examined Dawson at the request of the SSA in January 2008.[2] Dawson complained of intermittent low back pain, primarily on the left side, with radiating pain to her left leg. She also had recently been experiencing right-sided neck and shoulder stiffness. R. 273. Upon examination, Dr. Carpenter observed that Dawson was alert and oriented. Dr. Carpenter did not observe any tenderness or spasms in the area of the spine, and a straight-leg raising test was negative. R. 274. Dawson had full range of motion (ROM) in all upper extremity and lower extremity joints with no point tenderness. R. 274-75. Dr. Carpenter's impression was chronic low back pain, stable, and right-sided cervical myospasms with unremarkable physical exam. R. 275.

---

[2] The ALJ incorrectly indicated that this examination was performed by Dr. Shoemaker, one of Dr. Carpenter's partners.

On January 14, 2008, Timothy Foster, Ph.D., prepared a psychiatric review technique form after review of Dawson's records. Dr. Foster opined that Dawson would have no limitations in activities of daily living, and mild limitations in social functioning and maintaining concentration, persistence or pace. R. 281-91.

On July 25, 2008, Gary Buffone, Ph.D., also prepared a psychiatric review technique form after review of Dawson's records. He indicated that Dawson would have mild limitations in activities of daily living, social functioning and concentration, persistence or pace. R. 307-17. He opined that her mental impairment was not severe. R. 319.

On July 28, 2008, Nicolas Bancks, M.D., prepared a physical RFC assessment based on review of Dawson's records. R. 321-28. Dr. Bancks opined that Dawson could lift up to fifty pounds occasionally and twenty-five pounds frequently. She could sit, stand or walk about six hours in an eight-hour workday. He wrote that "even a generous allowance for credible pain does not preclude at least the above RFC." R. 326.

Gail van Diepen, D.O., began treating Dawson in June 2009. Dawson initially complained of lumbo-sacral pain and depression. Dr. van Diepen prescribed Lexapro and Lortab. R. 329. In January 2010, Dawson reported that she still had anxiety and depression and that she had an adverse reaction to Lexapro. Dr. van Diepen noted that Dawson admitted that she was still drinking alcohol about every day. Dr. van Diepen prescribed Paxil. R. 331. In March 2010, Dawson reported lower back pain, right heel pain and anxiety. She indicated that Paxil was not working and made her fuzzy and confused. Dr. van Diepen increased the

dosage of Paxil. Dawson requested Vicodin, apparently for back pain. Dr. van Diepen prescribed Lortab. R. 330. A handwritten note indicated that Dawson must have a liver check and x-ray in three week, and "no more lortabs." *Id.*

  C. *Claimant's Testimony and Statements*.

Dawson testified that she could not work because she became extremely nervous and sometimes felt that she needed to leave the building. R. 36. She wrote that she also had depression. R. 164. Dawson testified that she was unreliable, had difficulty understanding and could not focus. R. 45-46. When she had a panic attack, sometimes she felt as if she could not breathe and could not move. *Id*.

Dawson's sister testified that Dawson had panic attacks at stores, grocery shopping or eating out at lunch. R. 47. The attacks happened suddenly and had become progressively worse. R. 48. Some days Dawson would go out alone, but other days she might not go out at all. R. 168. Dawson's sister believed that Dawson had not used illegal drugs or used alcohol to excess since she completed her most recent term of imprisonment in 2006 or 2007. R. 50-51.

Dawson testified that she had taken anxiety medicine for quite a few years. R. 37-38. Paxil had helped with anxiety previously, but the generic form of the drug she was taking at the time of the ALJ's hearing was not effective. R. 42.

Dawson also had back problems and bone spurs in her heels. She did not have funds for treatment. R. 41; *see also* R. 180. Her brother and sister sometimes paid for her medical office visits. R. 44. Medication helped relieve her back pain, with no side effects. R. 42.

Dawson estimated that she could walk a few blocks, but she had a hard time standing in one spot. R. 42. She could sit but tended to move up and down. R. 43. She could lift a gallon of milk. R. 42-43. She was able to drive. R. 33. She did some household chores but reported that she could not do other house or yard work due to back and shoulder injury. R. 158-59. She could participate in activities of daily living. *See* R. 157-64. She spoke with her sisters on the phone or they stopped by three to four times a week. R. 161. She also attended some family gatherings. Due to anxiety, she had difficulty understanding, remembering and completing tasks. Whether she could follow written and spoken instructions depended on how simple or difficult the instructions. R. 162.

She had been in jail about ten times, most recently due to a domestic argument with her boyfriend as a result of which she was charged with elder abuse. R. 38-39. She had also used illegal controlled substances since her mid-30s. R. 39. She had relied on alcohol to deal with her anxiety and panic disorder. R. 40. While she initially testified that she had not used heroin in at least twenty years, R. 39, after her sister testified Dawson estimated that she not used illegal drugs since early 2000. R. 53-54. She still drank alcohol on occasion. R. 40-41.

*D.     Vocational Expert Testimony.*

The ALJ asked the VE to assume the following hypothetical individual:

> Claimant's age, education and vocational background capable of the full range of light work. This person . . . would be limited to jobs involving simple, routine, repetitive tasks with up to three step commands with only occasional interaction with the general public and occasional interaction with co-workers.

R. 55. The VE testified that this hypothetical individual could perform the following jobs, which were available in significant numbers in the national economy: maid (light, unskilled); mail clerk (light, unskilled); and, office helper (light, unskilled). Two absences from work a month would erode the number of available jobs and three absences a month would eliminate the jobs. R. 55-56. Whether the need to take unscheduled breaks due to psychologically-based symptoms would allow the person to perform these jobs would depend on the length of each break. R. 56.

**V.    ANALYSIS.**

Dawson makes three assignments of error. She argues that the ALJ did not properly consider functional limitations arising from moderate limitations in concentration, persistence and pace and social functioning in the RFC determination and the hypothetical question to the VE. She contends that the ALJ erred in evaluation of her back problem. Finally, she submits that the ALJ erred by failing to state the reasons he did not credit Schur's testimony and for

his conclusion that Dawson's testimony was not entirely credible. These are the only issues I will address.[3]

   A.   *Mental Functional Impairments.*

Dawson argues that the ALJ failed to include moderate limitations in concentration, persistence or pace in the RFC assessment or in his hypothetical questions to the VE. Her counsel cites a portion of the decision in *Winschel v. Commissioner*, 631 F.3d 1176, 1180 (11th Cir. 2011), in support of that argument. Doc. No. 15 at 7. Considering the portion of the *Winschel* decision quoted by Plaintiff in context reveals that the Eleventh Circuit did not hold that limitations in concentration, persistence or pace can never be accounted for by a functional limitation to performing simple, routine tasks or unskilled work. In this regard, the *Winschel* Court wrote as follows:

> Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

*Id.* at 1180 (internal citations omitted).

In the present case, the ALJ accounted for moderate limitations in concentration, persistence or pace by including in the RFC and in the hypothetical question to the VE a

---

[3] The parties were advised that issues not specifically raised would be waived. Doc. No. 14 at 2.

limitation to simple, routine, repetitive tasks involving up to three-step commands. While Dawson argues that this limitation does not account for the ability to concentrate, she offers no legal or other authority supporting that argument, other than the quotation from *Winschel* that was taken out of context. Accordingly, Dawson has not established that the ALJ erred in assessing the functional limitations arising from moderate limitations in concentration, persistence and pace.

The same analysis applies to Dawson's arguments about moderate limitations in social functioning. "Social functioning addresses a person's ability to interact with the public, get along with coworkers and peers, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior. Accommodations for moderate limitations in social functioning may include, for instance, requiring that the person work in a job with 'limited public contact.'" *Douglas v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1327-Orl-28KRS, 2011 WL 5358660, at *8 (M.D. Fla. Oct. 12, 2011), *adopted and confirmed*, Case No. 6:10-cv-1327-Orl-28KRS, Doc. No. 22 (M.D. Fla. Nov. 7, 2011). The ALJ found that Dawson's limitations in social functioning could be accommodated by limiting Dawson to work requiring only occasional interaction with the general public and co-workers, which limitation he included in the hypothetical question to the VE.

Dawson contends that the limitation to only occasional interaction with the general public and co-workers did not properly account for agoraphobia, which caused Dawson not to leave the house on some days. The ALJ's decision reflects, however, that he did consider

limitations arising from agoraphobia. Among other things, he relied on Dr. Oatley's conclusion that Dawson had social phobia indicated by anxiety when forced to interact in public and other evidence that showed that Dawson was able to interact with smaller groups of people, including with her boyfriend and family members. This finding is further supported by Dawson's statement to Dr. Oatley that she did not have unexpected anxiety attacks. Rather, those attacks occurred in supermarkets or when forced to go to a doctor's office. This finding is also consistent with Schur's testimony that Dawson's panic attacks occurred in public places such as stores, supermarkets and doctor's offices.

Dawson has presented no legal or other persuasive authority supporting her argument that the limitation to only occasional interaction with the general public and co-workers is not a sufficient functional limitation to address moderate difficulties in social functioning. Substantial evidence supports the ALJ RFC finding in this regard. Accordingly, this assignment of error is not well-taken.

B. *Back Impairment.*

Dawson argues that the ALJ erred by failing to find that she had a severe back impairment and failing to include functional limitations arising from this impairment in the RFC and question to the VE. She cites Dr. Carpenter's finding that she had chronic low back pain and muscle spasms in her neck.

The record reflects that Dawson reported a back injury more than twenty years ago. There is no medical evidence that the injury to her back was subsequently exacerbated. The

ALJ correctly noted that Dr. Carpenter found that Dawson's physical examination was unremarkable and that her back pain was stable. Dr. Bancks, a reviewing physician, also indicated that "even a generous allowance for credible pain" did not preclude Dawson's ability to work. R. 326.

The ALJ also observed that Dawson had not sought significant treatment for back pain. Dawson counters that the record shows that she did not have funds for treatment. However, Dawson was able to obtain treatment from a health clinic, the DOC and through payments to medical providers by her family. When she could obtain treatment without cost, such as from the DOC (albeit before the current alleged disability onset date), the records do not show that she regularly sought treatment for back pain. In 2009, Dawson asked Dr. van Diepen for strong pain medication, specifically Vicodin, an opiate-based medication. While Dr. van Diepin prescribed Lortab (also an opiate-based medication) in response to Dawson's request, a handwritten note indicates that it would not be prescribed again. Based on this evidence, and the record as a whole, the ALJ did not err in relying on Dawson's failure to seek significant treatment for back pain.

Even if the ALJ's reference to failure to seek significant treatment for back pain is disregarded due to evidence that Dawson did not have funds for medical treatment, substantial evidence in the record supports his determination that Dawson's back injury and pain were not severe impairments. Therefore, this assignment of error is unavailing.

*C.    Credibility.*

Dawson argues that the ALJ erred by failing to state reasons for finding that her testimony was not completely credible. When an ALJ decides not to credit a claimant's testimony about pain and other subjective symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (per curiam) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The ALJ cited adequate reasons for finding that Dawson's testimony was not entirely credible, which reasons are supported by substantial evidence. Regarding Dawson's anxiety disorder, the ALJ correctly noted that Dawson had not consistently scheduled appointments with Dr. van Diepen. He observed that Dawson worked, albeit at less than substantial gainful activity levels, after the alleged disability onset date. He relied on Dr. Oatley's psychological testing of Dawson, which showed that Dawson did not have concentration or memory deficits. He also relied on Dr. Carpenter's essentially unremarkable physical examination. These same reasons support the ALJ's rejection of the testimony of Dawson's sister that Dawson sometimes could not leave the house due to anxiety.

The ALJ also cited Dawson's imprisonment as a basis for the credibility finding. Because there is no showing that Dawson's criminal history involved a conviction for a

dishonest act or false statement, imprisonment alone does not undermine Dawson's credibility. However, as the ALJ observed, Dawson's failure to state her history of use of controlled substances candidly was a valid basis supporting the ALJ's credibility finding.

Accordingly, this assignment of error is also not well taken.

## VI. RECOMMENDATION.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**. It is further recommended that the Court direct the Clerk of Court to issue a judgment consistent with its Order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** this 17th day of April, 2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE